Ohio. Case number 13-4321. Ryan D. Patterson and others v. City of Akron Ohio. Arguments not to exceed 15 minutes per side. Ms. Schuster for the appellants. Thank you, Your Honor. Your Honor, I have brought up to the table with me Brian White, who is a new associate in our firm. He is not going to be speaking to the court. He is just going to be, I think, enjoying himself. That's fine. Yeah, no problem. It's fine for lawyers up there, clients not so much. You may proceed. I'm sorry. And feel free to adjust the height if you want to. It's up to you. There's some button somewhere. I had to adjust the height. Somebody had this set up. It was almost above the counter here. That's right. It needs to be higher. You thought I was hiding, didn't you? Your Honor, all of you, good morning. I'm Nancy Schuster. I'm from Cleveland. In my other life, long ago, I used to be here very much. I was an assistant U.S. attorney for the Northern District of Ohio. I have to say that although the people change, the institution is still as wonderful as it ever was. Thank you. I think in this case, the court must look at the facts very briefly before we begin. I think it's important to note how this case began. Brian Patterson and his brother Derek grew up in a suburb of Akron in a house that their parents bought before they were born and in which the parents still live. They were both honor students in high school. Derek graduated from Ohio University and became a mathematics teacher. Brian dropped out of Ohio U and became a landscaper. They both moved to Florida. Derek, who was the older brother first, and then Brian when he left college. They came back to Akron for Memorial Day in 2006. After having dinner with the family, they each went separately to a hangout near the University of Akron that the 20-somethings used to like to go to called Fat Tuesdays. When Brian left Fat Tuesdays, he went outside and there was a patrol car, an Akron patrol car. You're familiar with the facts. Okay, I'm going to go very quickly. Doesn't the fact that these individuals both have a sophisticated background work against you because they're educated, good students? Doesn't that work against you on the question of whether or not the plea agreement and the deal was one that should be enforced? You say it shouldn't be enforced, right? But these people, these are two individuals. They're articulate. They're capable. Doesn't that mean that they're sophisticated? That's one of the components. Your Honor, when I first started in the law, I used to say I'm just a poor little white girl from the suburbs. They are from the suburbs. They're African American, and they are not sophisticated in the criminal law. They had not been to court before. Brian had never been charged with a crime. He had never been inside a court. He was not the least sophisticated in the ways of the court or the ways of the criminal law. He, in fact, didn't even know what an indictment was. My question relates to Judge McCullough, so I want to put it out there so you can answer them both together perhaps. Are we, sitting as a court now, supposed to decide as a matter of law whether the release-dismissal agreement was valid? Obviously, if that's the decision, then we have to look at the point Judge McCullough raised, and that is the sophistication of the parties to get voluntariness and all of that. What are we deciding? The validity of that agreement or whether there's a question of fact regarding the validity of the agreement? Your Honor, this was on summary judgment and you are deciding whether there is a question of fact regarding this alleged release. The question of fact would be decided by the jury in the case of the question of voluntariness, and it would be decided by the court in the case of the issue of whether there was a public good or not and the issue of whether there was prosecutorial misconduct. It's our position, and I think I can show this to the court, that the voluntariness issue goes entirely almost in favor of Bryan when you look at the six factors of voluntariness. That's not exactly correct. He was represented by counsel, right? Your Honor, as you know from reading the facts, his counsel had been a lawyer for a year and had actually only been licensed to practice for five weeks. His counsel knew nothing, and the only representation his counsel provided him was to address the court and in addressing the court to say we're here and we want to change our plea. That was it. Bryan had said previously that he wouldn't sign a release, and what he meant by that was he didn't want to release anybody. He was told... Well, he might not have wanted to, but he was facing a pretty serious charge, and to avoid a felony conviction is something that is a benefit for the rest of his life. It doesn't seem crazy that he would give up a claim against an officer whom he allegedly kneed in the head and he's facing a felony charge. The judge is there presumably making sure this is proper and contrary to the public interest. I'm sorry, but if you look at the facts, and you have to look at the facts because this is a summary judgment. You have to look at the facts in the light most favorable to Bryan, and you have to draw the inferences most favorable to him. If you do that, you would look at the fact that nobody other than a police officer saw Bryan kneeing anybody. I'm not talking about whether he kneed the person or not. I'm saying he was facing a very serious charge. He was, Your Honor. His life is going to change. It doesn't matter if he goes to jail or not. He avoids that. If we're trying to say, is this voluntary? Well, that's a reason to think it is. Judge, I agree with you, but what you have just articulated is the coerciveness of a felony charge when it is not in order. I'm saying to you that this felony charge exists because the police took a perfectly peaceful evening and turned it into an event. Nothing happened except Bryan leaned against a police car. I want to ask you about what is the specific prosecutorial misconduct that you have identified, and is that what you contend negates the voluntariness of the plea? No, it's not. What is the prosecutorial misconduct? The prosecutorial misconduct is charging a felony when the felony would not otherwise be charged in order to obtain a release. The prosecutor charged conduct that was charged high, rather, in order to coerce the plea is what you're saying. I'm saying he overcharged the defendant in order to coerce a plea. I'm saying that if you look at the facts in the light most favorable to Bryan, and you draw the inferences favorable to Bryan, you cannot find a charge of assault on a police officer present in the facts. It's not there. Isn't that the reason, though, to go to trial on the merits? That would be the reason, except that to be faced with a felony charge when you've never been charged with anything and you're a guy innocent of the criminal law is hugely coercive. It happens over and over again that people faced with... In this participation, though, the judge says it is the court's understanding that you've agreed to return, in return for that consideration, not to institute any lawsuit against any of the police officers involved, or the city of Akron in this case. Is that correct? And he says yes. Your Honor, he said yes to three pages of questions, which, as you know, are the standard questions in a trial criminal court that are asked. The answers aren't standard answers. There are no standard answers. You give the answer that's responsive to the question. The questions may be standard, but the answers are whatever they are. I don't think that this is what's meant by judicial supervision. I think what's meant by judicial supervision is the kind of case which this Court has addressed, where the Court has the parties in chambers, or where an agreement is signed, or where the terms of the agreement are read to the Court, and the Court approves of those terms. That is not the situation here. The Court was simply asking a rote question in a long series of rote questions, and got a rote answer. That is not judicial supervision by any stretch of the imagination. The Court had no idea whether negotiations had taken place, and didn't ask, by the way. You indicate that Mr. Patterson only had a new attorney on the day he ended his plea, somebody who had only been licensed for five weeks, but he had other counsel prior to that, and in fact he rejected the plea earlier, hadn't he? He had told his other counsel that he would not sign a release. That's rejection of the plea. Right. When they got to court, he was told, I think if you look at his affidavit, he was told that if he wanted the state to drop the felony charge of assaulting a police officer, he would have to agree to an oral release. He was also told that he would have his case expunged, which it was, and that along with his release would go the expungement. This is not something that somebody who is not familiar with the criminal law can think up. This is what he was told, and this is what he believed. He did not intend to make an agreement that lasted forever, and he didn't think he was. Also, I need to say that I have all respect for Judge Leoy. However, I believe in this case she was absolutely wrong because she put the burden on Brian. Tell me this. In your situation, what is your strongest reliance? Is it the thing that best supports your position? Is it the law, or is it the facts in this case? That's a hard question to answer. I think that when you're talking about the voluntariness you have to deal with the facts. I think the facts as a matter of law lead to the ultimate conclusion that his release was not voluntary, that the prosecutor was hugely overcharged, and that the coercive nature of that act accomplished the purpose that was intended, which was to obtain a release. In a situation where a person was tasered while handcuffed behind his back, fell flat on his face... You are out of time. If you're done answering... I wanted to save some time for rebuttal. But you didn't save any? I didn't ask you to save me some. Did you tell the clerk? No. We'll give you one minute in rebuttal. Was your question answered? I'm satisfied. I'm sorry, I just wanted to keep it on track. May it please the Court and Counsel, I'm Assistant Director of Law, Michael Deffelbaugh with the City of Akron, and I represent the Appalachians in this case. Your Honors, there are two separate and distinct issues on appeal filed by the appellants. The first is dealing with Brian Patterson and the release-dismissal agreement, and the second issue is on behalf of Derek Patterson and arguing that the District Court made some evidentiary issues. The first issue regarding the release-dismissal agreement. The appellants, as of yesterday, filed a case, Marshall v. City of Farnington Hills, as supplemental authority in support of the appellant's position that this agreement is not enforceable. I encourage this Court to review Marshall and compare the facts in Marshall with the facts of this case. Brian Patterson is college-educated. He went to Ohio U for two years and then to the University of Akron. So be it, he may not have graduated, but he certainly can meet the purpose of the voluntary agreement by reading and writing. He certainly can do this as an attendee at Ohio University. Furthermore, as this Court has alluded to, this agreement was rendered before Judge Cosgrove, who took time, unlike in Marshall. Isn't your problem in this case the language on page 9 of the trial court's, District Court's opinion, where it says, Brian also fails to show and doesn't even argue that there was any prosecutorial misconduct involved in obtaining this waiver or that it would not be in the public interest to uphold the waiver? Isn't that the problem for you in the case? That is the incorrect placement of the burden. Yes, Your Honor. Certainly the District Court stated in the opinion that the burden was on the appellant. The burden is certainly resting with the appellees to establish. If the District Court stated it on a false premise, then we've got a problem. Your Honor, not necessarily, because the record evidence, although the District Court may have stated that, the appellees clearly produced sufficient evidence to show that there was no prosecutorial misconduct in this case. Specifically, first and foremost, the trial transcript of Judge Cosgrove with a Summit County prosecutor. Unlike Marshall, there was no city of Akron prosecutor involved in this criminal prosecution. It was a county prosecutor separate and distinct from the city. I think that... Just the transcript? Yes, the transcript. No affidavit or anything else? No, Your Honor. There's no affidavit from a prosecutor. So there's nothing in the record to show why the prosecutors conditioned the release from civil liability in negotiating the plea on a criminal charge. There's nothing in there for them... I mean, they didn't put anything in the record to show why those two things were hinged together. Well, in analyzing this case, as the Marshall Court stated on a case-by-case basis, Brian Patterson entered a plea to resisting arrest. So it wasn't simply to cover up charges. He did enter a plea on a misdemeanor for exchanging the dismissal of the felony and releasing the city and officers of liability. As the appellant said, this goes back, though, to questionable activity on the part of the officers because the initial contact ensued as a result of someone leaning on the patrol car. I didn't see the part of the ordinance or statute that that conduct violated, but I know that's not where we're getting into right now. It's whether or not this was voluntary and whether the release was proper under the Rummery case, correct? Certainly. And this court in Coughlin v. Coots stated that you closely scrutinize release agreements when there is substantial evidence supporting an allegation of police misconduct. This case is absent of any evidence of police misconduct. In fact, Derek Patterson under the same circumstances, we tried this to a jury who unanimously came back in favor of the defense. I'll talk about that, too, because they object to some evidentiary decisions. But certainly, the record is devoid of any evidence showing there's any police misconduct whatsoever. I don't understand that. Of course there is. The testimony of the plaintiffs. These guys were tasing them like crazy after they submitted. But those are not the facts and circumstances that rise to the level of police misconduct in this case. They are if they've totally submitted and there's basically just gratuitous tasing happening after that. I mean, there's a reason why the other case went to trial, right? Because there's a factual dispute about whether there was police misconduct. If that's your argument in support of the release being okay, then the fact that the case went to trial would suggest you may have a problem. I'm not saying... I'm sorry, Your Honor. That's not the reason. I'm simply stating that a jury has already found under the same circumstances that there was no police misconduct. That's not... Applying the same facts and circumstances and the reference to gratuitous force, there is no issue regarding application of gratuitous force to Brian. Brian jumped on an officer's back when the officers were arresting his brother. He was tased with probes. Brian broke away from the tasing with probes and ran over and kneed an officer in the head and then was placed in handcuffs. So there was no issue regarding any application of gratuitous force to Brian Patterson. Well, do you have other questions you want to ask right now about the release? No, you go ahead now. Well, when the taser report was submitted, the judge said that there was a lack of evidence. Now, what rule was that ruling based on? The judge based it under two separate rules. The appellant was seeking, Derek Patterson was seeking to introduce a taser download report that's promulgated by Taser International. You have an 803? Correct. Why couldn't it have been received under one of the exceptions under 803? It certainly did not qualify as a business record or if it did qualify as a business record, the proper Was it regularly maintained? There was no witness to testify to that fact. The appellant had the burden under the rules of evidence to have a witness The report is really fascinating. It's interesting. I'm not sure it could be received. I understand that. But it does show the numbers and it goes up to a nine. Do you remember that? Yes. You've got a six, five, nine, five, four, and those are clearly the highest sequence of numbers anywhere in the report, right? There's no testimony regarding that fact. Duration. Well, it's got the words duration about it. Correct, but that's the problem here and that lies with taser download reports. It's not my testimony, the district court's testimony, or counsel for the appellant's testimony. They need interpreted. The times need calibrated. So those times that are on that sheet are not actual calibrated times. Therein lies the problem on why there needs to be a foundation and testimony, especially in light of 403, not to prejudice the jury and confuse the jury. On the release, didn't the other question, the timing, how much time he had to consider it? Certainly. How much time did he have to consider the waiver? Your Honor, certainly throughout the, first and foremost, Bryan Patterson was indicted on felonious assault, which establishes probable cause for assault on a peace officer pursuant to the Sixth Circuit. So there is a grand jury indictment outside of the prosecutor trumping up charges as alleged. The timing of the case proceeded several months. The record is absent in this case of the qualifications of his criminal defense counsel. Now, I will submit to the court that the firm is very well known for criminal law, and this is the first I've learned they're not very effective. But that is not on the record before this court. He was counseled. The transcript is clear that Judge Cosgrove ensured that due process is met. There is a meeting of the minds that is present by her inquiring whether he was coerced, whether he was promised something, whether there were any issues that were requiring him to enter into this agreement. If this agreement is not valid, then release agreements are not valid anywhere. That would be the effect of finding the facts of this case. If you found against this release agreement, then in effect, all practical effect, all release agreements would not meet the matter of agreement. It would not be an agreement between the prosecutor and the criminal defendant. Going back to 8038, I'm sort of puzzling over why it's not a public record. I mean, Bickett testified that he knew that, quote, tasers are recorded and downloaded during incidents. There was an investigation of this incident. That's why they printed this thing out, is my understanding. Why isn't this factual findings from a legally authorized investigation? First and foremost, it's a compilation of data. So maybe it's not a statement by a person at all. So maybe it's not hearsay at all. It's certainly hearsay. Why? There are a lot of strong modifiers. I'm not so certain about some of these things. It's hearsay on the basis that out-of-court statement used in court for the truth of the matter. That's the problem. Of a person. This isn't my question, but it's a statement of a person. That's what the rule says, if I recall. I mean, who's the person here? It's a printout. Correct. But certainly it's a document. Let's go back to my question. Why doesn't the report reflect factual findings pursuant to an investigation? Because that report is not factual findings part of an investigation. There is no investigative report in the record before this court. There was no investigative report that was submitted into evidence by the appellants or the appellees in this matter. But the linchpin of the rules is to just ensure that the information coming in is trustworthy. What is it about this report that makes it untrustworthy? I'm not talking about the gatekeeping function now, the admissibility. That's a separate situation, but what is it about this that makes it untrustworthy so that it could not, on the appropriate rules, come into the record? The document on its face. Why is it untrustworthy? Correct. The document on its face is not accurate. Each time there were five taser deployments. How do we know that? I know it through my taser training. That's the fact. That's the key. How do we know it from the record? That's correct. That's the key in this case. There is no evidence. Judge Leoy was presented with no foundational evidence to get past the inherent untrustworthy of the record. Let me maybe distill it down to this. Officer Bickett says he clicks the thing three times at the crowd and then several seconds later he tases, I forget if it was Brian or Derek, he tases one of the two of them twice. The report does not back that up. The report says five in almost immediate succession. Not a two or three second break, which could be like an eternity when we're talking about milliseconds and these sorts of things. It contradicts the testimony of Officer Bickett on a question by the way that the jury specifically sent a note saying they wanted to see the report for this purpose. Are you saying that the timing intervals between the shots, are you saying that is unreliable here? Correct. It's not our burden as appellees to produce this evidence. Why isn't that just argument about the weight? Well, that's what counsel suggests is simply put the form in and allow us to argue. It's not about weight when it's untrustworthy. Presumed admissible and now you're telling us that this report which is downloaded because Officer Yeo asked Officer Bickett for his taser to download the thing. Now you're telling us that information is so worthless that the presumption of admissibility is defeated and the jury can't even hear about it and make their own decision after listening to your argument about whether it's reliable. But it's simply, Your Honor, the rules of evidence require foundational testimony to properly authenticate which was stipulated. Just to finish real quick that would be Officer Yeo asked me to give him my taser pursuant to this investigation. That checks the investigation box. But there's no evidence excuse me, under Rule 403 the dangers of misleading a jury. But I'm talking about the foundational point which seems to me probably met. If you want to talk about 403 that's fine. But understand it's just a different point. Correct, Your Honor. And I'll stop because I know other people have questions. Because this you say can't come in under any way then it certainly represents a reasonable challenge to the credibility of the testifying officer. But we don't even get to examine, the jury doesn't get to examine that credibility issue which is manifested in the report and he can defend it or not. But the jury doesn't get to hear that. Judge Donald with all due respect, there is a case management trial plan. An expert could certainly, through the discovery process, receive this taser download, analyze the download, do the appropriate analysis of the download and explain it to the jury. And if there is, if there is a distinction between Officer Bickett's testimony and the taser download, then certainly that would be for a jury's consideration. The athlete's argument in this case is the record is devoid of any such evidence or expert. This is what I'm getting at. The officer testifies on direct testimony to the jury. I tased, you know three times in rapid succession or whatever from the crowd and then I did this. You don't need an expert to go back and decode that for the jury. You've got the officer testifying, this is what I did. Right? Correct. And so, if there is a report that says the tasing occurred in this rapid succession, why do you need an expert to say that there are two seconds between taser one or one you don't need an expert to testify about that, that it occurred one second apart as opposed to three? Certainly because the times are not calibrated, Your Honor. The times need to be calibrated to real time and you'll see a different sequential timing than what's on the taser download. And that's the problem and that's why we've been curious. The fact is simply that the appellants needed an expert witness to explain this to the jury and the taser download without any other foundational explanation was properly excluded under Rule 403. I see that my time is up and I ask you to affirm the District Court on both issues. Thank you. Thank you for your arguments. Thank you. A brief rebuttal here? Very briefly. Just a number of quick points as fast as I can. First of all on the subject of the judicial oversight of the release agreement. The State Court judge was a little confused because one of the questions that she asked Brian was are you satisfied with the legal representation that you've had from Attorney Rizzi, Attorney Congeni, and Attorney Baller? Attorney Rizzi was the five week lawyer. Attorney Congeni was a young lawyer who didn't come and Attorney Baller was the prosecutor. In response to this question my client said yes. The second thing I'd like to point out is my packet which I can tell the Court has read but this is a little packet of all of the times that I actually succeeded in obtaining answers from Officer Bickett. There is no question. He said to me at one point well they plug it in like a USB cable and it comes up on the computer screen. There's nothing to look at on the taser. It's a computer chip in there. It creates a set of records each time the trigger is pulled. Yes he said it does. Over and over again he's asked questions that are foundational questions and each time he answers the question can we agree the purpose of the taser download is to create a record. Yes. The record may be inside of the taser but it's to create a record. Yes. And the download prints the record. Yes. And the report inside the taser doesn't change. It's simply printed by the download. Yes. And what does it tell? It tells the time you pulled the trigger, the battery life, the temperature of the taser, and the duration of the trigger pull. That was the answer. So the foundation was laid over and over again. Okay. Thank you for your arguments. Thank you so much. Thank you. Case will be submitted.